UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEROME BONAPARTE

Plaintiff,

-vs-

TRI-STATE BIODIESEL, LLC and BRENT
BAKER

Defendants.

---

CIVIL CASE NO:

17-CV-2353
(RJS) (BCM)

# DEFENDANTS MEMORANDUM OF LAW
## FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56

Joshua A. Sabo, Esq.
*Attorney for Defendants*
287 North Greenbush Road
Troy, New York 12180
(518) 286-9050

## STATEMENT OF FACTS

This lawsuit arises out of Plaintiff Jerome Bonaparte's ("Bonaparte") employment by Tri-State Biodiesel, LLC ("Tri-State"). (Sabo Aff., Exh. A, ¶¶15-16). Bonaparte was employed as a Driver. (Sabo Aff., Exh. A, ¶15). The plaintiff drove trucks weighing in excess of 10,001 pounds and was employed to collect used cooking oil. (Baker Aff., ¶5). At all times, Tri-State had contractual agreements to sell the used cooking oil ("UCO") collected by Bonaparte to a known limited number of biodiesel producers located entirely or primarily outside of the State of New York. (Baker Aff., ¶10; Exh. A). On any given day, Bonaparte could be working in a vehicle engaged in interstate commerce as part of Tri-State's regular course of business. (Baker Aff., ¶¶13-16; Sabo Aff., Exh. C, p. 17). In 2009, when the United States Department of Labor audited Tri-State's operations, it concluded that Tri-State's Drivers and Hose Operators were exempt from the mandatory overtime provisions of the Fair Labor Standards Act ("FLSA") due to the Motor Carrier Exemption. (Baker Aff., Exh. B). Tri-State and Brent Baker justifiably relied upon the results of that audit to conclude the plaintiffs were exempt from the mandatory overtime provisions of the FLSA. (Baker Aff., ¶24).

**POINT I**

**SUMMARY JUDGMENT SHOULD BE AWARDED THE DEFENDANTS DISMISSING THE PLAINTIFF'S FAIR LABOR STANDARDS ACT OVERTIME CLAIMS BECAUSE THE DEFENDANT WAS EXEMPT UNDER THE MOTOR CARRIER EXEMPTION**

Plaintiff's first cause of action against defendants Tri-State and its CEO, Brent Baker, ("Baker") is brought pursuant to the FLSA alleging he was improperly denied overtime benefits. (Sabo Aff., Exh. A, ¶¶30-32).

Bonaparte was employed as a Driver by Tri-State.  (Sabo Aff., Exh. A, ¶15). The FLSA provides that employees who work in excess of 40 hours in a workweek are entitled to compensation at a rate of one-and-one half times their regular rate of pay unless that employee is subject to an enumerated exemption. 29 U.S.C. §207.  The exemption at issue in this lawsuit is the Motor Carrier Exemption.

Employees covered by the Motor Carrier Exemption are exempt from the mandatory overtime provisions of the FLSA.  The Motor Carrier Exemption exempts from overtime compensation employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours." 29 U.S.C.A. § 213(b)(1). The purpose of the exemption is to prevent conflict between the FLSA and the Motor Carrier Act. *Dauphin v. Chestnut Ridge Transportation, Inc.,* 544 F. Supp. 2d 266, 271 (S.D.N.Y. 2008).  Pursuant to the Motor Carrier Act, the Secretary of Transportation has the power to regulate the qualifications and hours of employees of "motor carriers" and "private motor carriers" engaged in interstate commerce. 49 U.S.C.A. §§ 301, 31501, 31502(b).  The motor carrier exemption applies to employees over whom the Secretary of Transportation has jurisdiction regardless of whether the

2

Secretary has actually exercised that authority. *Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 229 (2d Cir., 2002).

A "motor carrier" is a person providing motor vehicle transportation for compensation. 49 U.S.C.A. §31502(a)(1). To be covered by the Motor Carrier Exemption an employee must be engaged in "activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. 29 C.F.R. § 782.2; *Dauphin*, supra at 273. It is well established that Drivers are workers who directly affect the safety of operation of vehicles in the transportation of property as defined by the Exemption. See, e.g. *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 673 (1947).

To be covered by the Motor Carrier Exemption an employee must also be involved in interstate transportation. See *Dauphin*, supra at 274. As long as interstate transportation constitutes a "natural, integral, and inseparable part" of a worker's activities, the interstate transportation requirement is met. *Morris v. Comb,* 332 U.S. 422, 433 (1947).

In support of the motion for summary judgment, the defendants submit the affidavit of Tri-State CEO Brent Baker. Plaintiff Bonaparte was employed as a Driver by Tri-State. (Sabo Aff., Exh. C, p. 13). The Driver of a vehicle engaged in interstate commerce is necessarily involved in the safety of operation of the vehicle when he drives the truck. "There are four broad categories of workers whose duties are said to directly affect the safety of vehicle operation: drivers, mechanics, loaders, and helpers of the first three", *Fox v. Commonwealth Worldwide Chauffered Transp. of NY, LLC*, 865 F. Supp 2d 257, 266 (E.D.N.Y., 2012). The Department of Labor audited Tri-State's operations in response to a complaint that Tri-State was violating the FLSA by not paying overtime to its Drivers and Hose Operators for hours worked between forty

3

and fifty per week.  The Department of Labor concluded that Tri-State's Drivers and Hose Operators were both exempt from the FLSA due to the Motor Carrier Exemption. (Baker Aff., Exh. G). The Department of Labor's interpretation of the application of the motor carrier exemption to TSB's job titles of Driver and Hose Operator are not binding on this Court, but the DOL conclusion is persuasive evidence the Court may use in support of the Defendant's position. See *Dauphin*, supra at 273, n. 2; *Fox*, supra at 266, n. 12.

The Defendants submit documentary evidence of Tri-State's extensive interstate business activity in support of this motion for summary judgment. (Baker Aff., Exhibit A). The Baker affidavit describes how any Tri-State used cooking oil collection route could be entirely in a State other than New York, could include stops in both New York and outside of New York or could be entirely within New York. (Baker Aff., ¶13).  The Tri-State daily collection routes are created by a Dispatcher and there is no set pattern as to which Drivers are assigned to routes that include interstate commerce and which are assigned to routes that do not include interstate commerce.  During Bonaparte's employment with Tri-State, on any given day, any Driver could be required to travel out of New York to further Tri-State's business purpose of the collection of used cooking oil. (Baker Aff., ¶16).

When interstate transportation constitutes a "natural, integral, and inseparable part" of a worker's activities, the interstate transportation requirement is met regardless of actual number of hours they individually devote to interstate travel. *Dauphin,* supra at 274-5; citing *Morris* at 431. The *Dauphin* court describes a standard in which an employer is adjudged to be engaged in interstate commerce if the interstate commerce trips are distributed generally throughout the year and their performance was shared indiscriminately by its employees. *Dauphin,* supra at 275, citing *Morris* at 433.  The evidence submitted by Tri-State in support of this motion establishes

4

that interstate commerce trips were a natural, integral and inseparable part of the job responsibilities of the Tri-State Drivers distributed throughout the year and randomly to Drivers. (Baker Aff., ¶16).

Moreover, there is ample evidence that Jerome Bonaparte personally engaged in interstate commerce. At his examination before trial Bonaparte testified that "once in a while they would have me drive to Jersey or Connecticut". (Sabo Aff., Exh. C, p.16). Bonaparte corroborated Baker's testimony that the assignment of interstate UCO collection routes was random, "I couldn't predict. It could be I would just show up to work, [an interstate route] would be my route that particular day. It wouldn't happen for a while. Some random day they might … have me go, yes". (Sabo Aff., Exh. C, p. 17). Tri-State established that each of the Tri-State Drivers could be assigned to the routes in other states. (Baker Aff., ¶16). The Baker affirmation and Bonaparte testimony is sufficient to establish that interstate commerce was a natural, integral, and inseparable part of Bonaparte's job duties.  Once the defendants establish that interstate travel is a "natural, integral and ... inseparable part" of Bonaparte's employment, they make a prima facie showing of entitlement to summary judgment on the issue of whether McCoy engaged in interstate commerce at a sufficient level to trigger the motor carrier exemption. See *Dauphin*, supra at 275.

This is not the first case brought against Tri-State alleging FLSA violations.  See, e.g. *Williams v. Tri-State Biodiesel, LLC*, (S.D.N.Y. 2015), U.S. Dist. Lexis 7926.  Tri-State similarly made a motion for summary judgment in *Williams*.  The Defendants urge the Court to adopt some of the arguments in *Williams* (see Point II, below), but believes some of the reasoning used by the *Williams* Court may be flawed and should not be followed by this Court.

The Court in *Williams* engaged in an extensive discussion of the application of a "week-to-week" analysis as to whether an employee is engaged in interstate commerce at a sufficient level to trigger the motor carrier exemption. *Williams*, supra at 21-25. A prerequisite to coverage by the Motor Carrier Exemption are job duties affecting the safety of vehicles in interstate commerce. *Dauphin*, supra at 273. The cases cited by the *Williams* court applying the week-to-week analysis all involved employees with changing job duties bringing them in and out of that class of employees engaged in the safety of vehicles in interstate commerce and therefore in and out of possible eligibility for the motor carrier exemption at all regardless of the employer's involvement in interstate commerce. See *Williams*, supra at 21-22 citing *Masson v. Ecolab*, (N.Y.S.D., 2005) at 7; *McCann v. W.C. Pitts Constr. Co., Inc.* (S.D. Miss., 2011) at 8; *Crooker v. Sexton Motors, Inc.*, 469 F. 2d 206, 210-211 (1st Cir., 1972).

The Defendants believe the *Williams* Court's discussion of a week-to-week analysis is inapplicable to the Tri-State cases where Plaintiffs are Drivers and there are no questions of fact as to whether they are engaged in the safety of vehicles in interstate commerce. Neither the *Williams* Court nor the decisions cited therein stand for the proposition that Tri-State has an affirmative burden to engage in a separate and distinct analysis of each week of the plaintiff's employment to demonstrate coverage pursuant to the motor carrier exemption. The broader analysis employed by Tri-State in this memorandum is sufficient to meet the standard set by Second Circuit.

In addition to meeting the 'interstate commerce' requirement of the motor carrier exemption because Bonaparte's job duties included interstate job duties invoking the Motor Carrier Exemption, Tri-State also demonstrates the interstate commerce requirement is met because the UCO collected by Bonaparte was in the stream of interstate commerce. Even if Tri-

6

State collected UCO solely within the State of New York during Bonaparte's term of employment, it can still demonstrate Tri-State was engaged in interstate commerce by showing the 'practical continuity of movement' of the UCO collected by Bonaparte in the flow of interstate commerce. *Bilyou*, supra at 223 citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943).

The UCO collected by Bonaparte and other Tri-State drivers was returned to a Tri-State depot in the Bronx where it was strained and dried so it could be sold and readily used as biodiesel fuel. (Baker Aff., ¶8). At all times the UCO was collected by Bonaparte and his similarly situated Tri-State drivers the UCO was contracted to be cleaned and shipped and to a limited number of precisely known biodiesel producers. (Baker Aff., ¶10; Exh. A) At all times a majority of the UCO collected was shipped through interstate commerce to biodiesel producers outside of the State of New York. (Baker Aff., ¶10; Exh. A)

The *Bilyou* case is the leading Second Circuit decision on point for this portion of the Defendants' motion. The *Bilyou* court concluded the Defendant's intrastate drivers were nonetheless engaged in interstate commerce and covered by the Motor Carrier Exemption emphasizing the defendant intended a specific, out-of-state destination for the goods carried by the defendant' drivers at the time the transport commenced. *Bilyou* at 223-24. See also *Raymond v. Mid-Bronx Haulage Corp.* (S.D.N.Y., 2017) at 15-16.

The Baker affidavit submitted in support of this motion details the destination of the UCO collected by Bonaparte at all times relevant to this lawsuit. The evidence demonstrates the Tri-State UCO collection was involved in a "practical continuity of movement" in the flow of

7

interstate commerce as the UCO was collected, cleaned and shipped to one of a few known destinations to be used to produce biodiesel fuel.

Earlier in 2017 this Court analyzed questions about when collection activity does or does not comprise interstate commerce for the purposes of invoking the motor carrier exemption to the FLSA. See *Raymond,* supra. The Defendants believe that applying the *Raymond* analysis to the facts of this case will lead the Court to conclude Tri-State engaged in interstate commerce for the purposes of the Motor Carrier Exemption, even when those facts are viewed in a light most favorable to the Plaintiff.

Here, Tri-State establishes that the UCO collected by Bonaparte and its other Drivers was sold to biodiesel producers operating factories entirely or predominantly out-of-state, depending on the precise year of the analysis. (Baker Aff., ¶10; Exh. A) These facts are distinguishable from the *Masson* or *Raymond* cases in which the defendants were unaware of the final destination of the goods carried by their Drivers until after their employees brought goods back to defendant's warehouses. The *Masson* Court held, "Goods obtained by the wholesaler or distributor to meet the needs of specified customers pursuant to an 'understanding,' contractual or otherwise, although not for immediate delivery are in the stream of interstate commerce.". *Masson,* supra at 30-31.

The UCO collected by Tri-State meets the *Masson* standard of goods in interstate commerce. The UCO was collected to meet the needs of specified biodiesel producers engaged in contractual agreements with Tri-State to pay an agreed upon price for strained and dewatered UCO collected by Tri-State to be used for the production of biodiesel.

In *Raymond*, this Court placed great weight on the fact that the defendant, Mid-Bronx Haulage Corp. had no involvement with, control over or monetary interest in what happens to the product after it is delivered to a transfer station. *Raymond*, supra at 22. Tri-State operated its own UCO transfer station and maintained full involvement and control over the UCO it collected. Tri-State chose to sell the UCO only to producers of biodiesel (See Baker Aff., ) and was constantly trying to get the most advantageous deal for the sale of the product it collected. Given these facts, there can be no genuine issue of fact as to whether Tri-State intended the UCO collected by Bonaparte to be delivered to a few discrete final destinations at the time the UCO collections were made.

The evidence submitted by the defendants in support of this motion for summary judgment establishes the plaintiff's employment at Tri-State as a Driver was covered by the Motor Carrier Exemption of the FLSA. Those portions of the Complaint seeking judgment against the Defendants for failure to pay overtime at a rate of time and one-half to the Plaintiffs for hours worked each week between forty and fifty must therefore be dismissed.

## POINT II

### THAT PORTION OF THE PLAINTIFFS' COMPLAINT ALLEGING THE DEFENDANTS KNEW OF OR WILLFULLY DISREGARDED THE FAIR LABOR STANDARDS ACT SHOULD BE DISMISSED

At all times relevant to the Complaint, including the present day, the defendants believe they are in compliance with the Fair Labor Standards Act. (Baker Aff., ¶¶24-25). In 2009, the Department of Labor ("DOL") investigated the employment practices of Tri-State. DOL concluded Tri-State's recordkeeping was in compliance with the FLSA and concluded Tri-State's

employees are exempt from the overtime provisions of the FLSA because of the Motor Carrier Exemption. (Baker Aff., Exh. B).

Brent Baker and TSB justifiably relied upon the results of the DOL audit when they concluded their overtime and recordkeeping practices complied with FLSA. (Baker Aff., ¶24). The existence of DOL investigations confirming the propriety of an employer's practices relied upon by an employer is a sufficient basis to demonstrate that any FLSA violations are not knowing or willful. See *Hernandez v. Alpine Logistics, LLC*, (W.D.N.Y. 2011); *Williams*, supra at 48-53. That portion of the plaintiffs' Complaint seeking damages arising from a knowing or willful violation of the FLSA should be dismissed.

## POINT III

### THE APPLICABLE STATUTE OF LIMITATIONS FOR PLAINTIFF'S FLSA CLAIMS IS TWO YEARS

The statute of limitations for FLSA claims is two years, but it is extended to three years in cases of willful violations of the FLSA. *See Cortes v. Warb Corp.* (E.D.N.Y., 2016) citing 29 U.S.C. § 255(a). The Summons and Complaint in this action were filed on July 19, 2016. (Sabo Aff., Exh. A). Bonaparte's employment was terminated on July 1, 2014, more than two years prior to the filing of the Summons and Complaint. Once the Plaintiff's allegations of willfulness are dismissed for the reasons set forth above, the Plaintiff's FLSA claims must therefore be dismissed as untimely.

## POINT IV

## UPON DISMISSAL OF THE PLAINTIFF'S FLSA CLAIMS, ALL STATE LAW CLAIMS SHOULD BE DISMISSED

Federal district courts have supplemental jurisdiction over state-law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Once a district court's discretion is triggered under § 1367(c)(3), it balances traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Kolari v. New York-Presbyterian Hosp., 455 F.3d (2d Cir., 2006) 118, 121-122.

Here, the Defendants brought state law counterclaims against the Plaintiff sounding in conversion, unjust enrichment and fraud relating to allegations the Plaintiff sold UCO collected on behalf of Tri-State to its competitors and kept the proceeds of those sales. Counterclaim.

Plaintiff's second cause of action consists of New York State law failure to pay overtime claims that are duplicative of the Plaintiff's cause of action pursuant to the FLSA for failure to pay overtime claims. Plaintiff's third cause of action alleges the defendants violated New York State Labor Law by failing to pay Bonaparte wages for all hours worked. This claim was contradicted by Bonaparte at his Examination Before Trial:

11

"Q.      And were there any instances in which you weren't paid at all for time that you worked?

A.      No, I never had a situation like that." (Sabo Aff., Exh. C, p. 15).

When the Court balances the values of judicial economy, convenience, fairness and comity, it should treat this case as the 'usual' case in which the Plaintiff's second and third causes of action and Defendant's State law counterclaims are dismissed upon dismissal of the federal law claims in the Complaint.

## CONCLUSION

## DEFENDANTS MEET THE STANDARD FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

The court shall grant summary judgment on a particular claim or defense if the movant shows that there is no genuine dispute as to any material fact regarding that claim or defense and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it could affect the resolution of a claim or defense under controlling law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute—or issue—about a fact is genuine if there is evidence that would allow a reasonable jury to resolve the dispute in favor of the nonmoving party.

Here, the defendants have demonstrated there is no genuine dispute that the plaintiff is exempt from the FLSA pursuant to the Motor Carrier Exemption because the Plaintiff could be assigned to an interstate UCO collection route on any given day he worked and he actually drove interstate routes on a regular, if infrequent basis. The defendants demonstrated the Motor Carrier Exemption applies to Bonaparte because even on those days he was engaged in intrastate

collection routes, a majority of the UCO collected was to be transported to a distinct location outside of New York State by Tri-State pursuant to a contractual agreement.  The defendants demonstrated there was never a knowing or willful disregard of the FLSA by the defendants, the applicable statute of limitations is therefore two years, and the FLSA claims are time-barred because all of the allegations concern events occurring more than two years before the filing of the Summons and Complaint.  Upon dismissal of the Plaintiff's federal claim, the Court should decline to exercise supplemental jurisdiction over state law claims not decided on this motion and dismiss the Complaint and Counterclaim in their entirety.

Dated: December 21, 2017

By:    /s/ Joshua A. Sabo

Joshua A. Sabo, Esq.
Bar Roll No. JS1220
287 North Greenbush Road
Troy, New York 12180
(518) 286-9050 - phone
(518) 286-9051 - fax
jsabo@sabolaw.net